UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ASLAM CYCLEWALA, *also known as Javed Khan*,

    Petitioner,

v.

JEFFREY J. SEARLS, Facility Director, Buffalo Federal Detention Facility,

    Respondent.

**DECISION AND ORDER**

6:21-CV-06372 EAW

---

# INTRODUCTION

Petitioner Aslam Cyclewala a/k/a Javed Khan ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his continued detention pending removal violates his right to due process. (*Id.*).

Petitioner previously filed a petition seeking the same relief on September 4, 2020. *See Cyclewala v. Feeley*, 6:20-CV-06678 ("*Cyclewala I*"). On January 29, 2021, the Court entered a Decision and Order ("D&O") denying Petitioner's petition in *Cyclewala I*. (*Cyclewala I* (Dkt. 8), *reconsideration denied*, (Dkt. 11; 20)). In the instant petition, Petitioner renews his request for relief and submits supplemental information in support of the petition. For the reasons that follow, the Court finds that Petitioner has met his initial burden of demonstrating that there is good reason to believe there is no significant

- 1 -

likelihood of his removal in the reasonably foreseeable future, and that the burden has thus shifted to Respondent to rebut this showing. The Court further grants Respondent an opportunity to supplement his submissions by no later than January 18, 2022.

## BACKGROUND

### I. Factual Background

The factual background of this case is set forth in detail in the D&O, familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the key details below, and includes the relevant developments since the Court issued the D&O.

Petitioner is a native and citizen of India who entered the United States in 1986 using a non-immigrant visa and a "photo-substituted passport." (*Cyclewala I* (Dkt. 5-1 at ¶ 5 & n.2)). On April 29, 1988, Petitioner filed an application for temporary resident status with the former Immigration and Naturalization Service ("INS") under the name "Javed Khan," and his application was denied on December 12, 1989. (*Id.* at ¶ 6).

On February 13, 1991, under the name "Javed Khan," Petitioner was convicted of murder in the second degree, kidnapping in the second degree, robbery in the first degree, and possession of a weapon in the second degree. (*Id.* at ¶ 8). On December 8, 1994, Petitioner was issued an Order to Show Cause and Notice of Hearing charging him with being subject to deportation pursuant to various provisions of the Immigration and Naturalization Act ("INA") and an immigration judge ordered Petitioner removed from the United States on May 15, 1995. (*Id.* at ¶¶ 11, 14). On February 11, 2020, Petitioner was released from custody by the New York State Department of Corrections and Community Supervision and taken into ICE custody. (*Id.* at ¶ 20).

The following facts were not before the Court in *Cyclewala I* and were presented in connection with the instant petition.

On January 13, 2021, ICE reviewed Petitioner's detention status and determined that continued detention was warranted in light of the COVID-19 pandemic and the threat Petitioner presented to the general public. (Dkt. 4-1 at ¶ 7). On March 2, 2021, ICE sought an update on the status of the issuance of Petitioner's travel documents from the Indian Consulate and was advised that confirmation of Petitioner's nationality remained pending. (*Id.* at ¶ 8).

On March 3, 2021, an affidavit from Petitioner's friend, Shri Sanjeev Dutta, was received by ICE. (Dkt. 4-1 at ¶ 9). The affidavit indicated that the deponent had known Petitioner in school and confirmed Petitioner's name to be Aslam Cyclewala, also known as Javed Khan, and that he was the son of Ismail Cyclewala. (Dkt. 4-2 at ¶ 2). The affidavit was forwarded to the Indian consulate. (Dkt. 4-1 at ¶ 9).

On or about March 22, 2021, two other friends of Petitioner in Mumbai, India, Rahim Charania and Ganpath Deshmukh, submitted letters on Petitioner's behalf. (Dkt. 4-2 at 4-5). Both letters indicate that the individuals knew Petitioner since childhood and Deshmukh's letter identified the name of the high school Petitioner attended. (*Id.* at 5). ICE forwarded the letters to the Indian consulate on or about March 22, 2021. (Dkt. 4-1 at ¶ 4).

Petitioner's detention status was reviewed by ICE again in April of 2021. (*Id.* at ¶ 11). ICE determined that continued detention was warranted and served a Decision to Continue Detention on Petitioner on April 6, 2021. (*Id.* at ¶ 11; Dkt. 4-2 at 6). The

Decision to Continue Detention indicates that a travel document from India is expected and "ICE has reason to believe there's a significant likelihood that your removal will occur in the reasonably foreseeable future." (Dkt. 4-2 at 6).

On April 19, 2021, a consulate interview was conducted. (*Id.* at ¶ 12). The interview was conducted by telephone and the affidavit and letters submitted on Petitioner's behalf were again forwarded to the Indian consulate. (*Id.* at ¶ 12). On May 11, 2021, the Indian consulate advised ICE that it had obtained additional information during the interview with Petitioner and had shared that information with the authorities in India attempting confirm Petitioner's nationality. (Dkt. 4-1 at ¶ 13).

## II.     Procedural Background

As noted, Petitioner filed an initial petition on September 4, 2020 in *Cyclewala v. Feeley*, 6:20-cv-06678 ("*Cyclewala I*"). (*Cyclewala I* (Dkt. 1)). On January 29, 2021, the Court entered a Decision and Order denying Petitioner's petition. (*Id.* (Dkt. 8)). On February 12, 2021, Petitioner filed a motion for reconsideration (*id.* (Dkt. 9)), which was denied on February 16, 2021 (*id.* (Dkt. 11)). Petitioner re-filed his motion for reconsideration on February 22, 2021 (*id.* (Dkt. 12)), which was again denied on May 3, 2021 (*id.* (Dkt. 20)).

Petitioner filed the instant petition on May 6, 2021. (Dkt. 1). Respondent filed a response on June 28, 2021 (Dkt. 4), and Petitioner filed a reply on July 15, 2021 (Dkt. 6), and supplemental filing on August 30, 2021 (Dkt. 7).

**DISCUSSION**

I. **Jurisdiction**

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

II. **Named Respondents**

As a threshold matter, the government contends that Jeffrey Searls, Officer in Charge of the BFDF, is the only respondent with immediate custody over Petitioner, and consequently the only proper respondent. (Dkt. 4-3 at 12). The Court agrees with the government and dismisses all respondents except for Jeffrey Searls from the instant action. *See Rodriguez v. Barr*, No. 6:18-cv-06757-MAT, 2019 WL 2192516, at *3 n.3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this § 2241 proceeding as he is the person with direct control over Petitioner's detention." (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[I]n habeas challenges to present physical confinement . . . the default rule is that the proper respondent is the warden of the facility where the prisoner is

being held[.]"))), *reconsideration denied*, 2019 WL 6037275 (W.D.N.Y. Nov. 14, 2019); *Hassoun v. Sessions*, No. 18-CV-586-FPG, 2019 WL 78984, at *7 (W.D.N.Y. Jan. 2, 2019) ("The majority view in the Second Circuit requires the 'immediate custodian,' generally the prison warden, to be named as a respondent in 'core' immigration habeas proceedings—*i.e.*, those challenging present physical confinement." (quotation omitted)); *see also S.N.C. v. Sessions*, 325 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) ("If, on the other hand, the petition challenges a broader form of legal, non-physical custody, then the proper respondent is the person with legal authority to effect that custody.").

### III. Legal framework

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682. The removal period begins on the latest of: (1) the date the removal order becomes administratively final; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) the date the alien is released from detention or confinement, unless such detention or confinement is the result of an immigration process. 8 U.S.C. § 1231(a)(1)(B).

After expiration of the 90-day removal period, 8 U.S.C. § 1231(a)(6) allows the Government to continue to detain certain classes of aliens or to release them, subject to appropriate terms of supervision. *Id*. In *Zadvydas*, the Supreme Court read "an implicit limitation into" § 1231(a)(6), holding that "the statute, read in light of the Constitution's

demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." 533 U.S. at 689. The *Zadvydas* Court further adopted a 6-month "presumptively reasonable period of detention," and instructed that "[a]fter this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; *see also Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) ("The [*Zadvydas*] Court stated that detention is presumptively reasonable for six months following a final removal order, and that, after the first six months, detention violates § 241 if (1) an alien demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future and (2) the government is unable to rebut this showing.").

> An extension of the removal period is permissible in the following circumstances:
>
> First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal. § 1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. § 1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. § 1231(a)(6); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

*Johnson v. Guzman Chavez*, __ U.S. __, 141 S. Ct. 2271, 2281 (2021).

Generally, where the Department of Homeland Security ("DHS") determines that the removal period has been extended arising from a failure to apply for documents or other frustration of the removal process pursuant to § 1231(a)(1)(C), it is required to "[s]erve the alien with a Notice of Failure to Comply" that explains the relevant statutes and provides "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements." 8 C.F.R. § 241.4(g)(5)(ii). However, "[t]he fact that the Service does not provide a Notice of Failure to Comply, within the 90-day removal period, to an alien who has failed to comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct." *Id*. § 241.4(g)(5)(iv); *see also de Souza Neto v. Smith*, No. CV 17-11979-RGS, 2017 WL 6337464, at *1 & n.2 (D. Mass. Oct. 16, 2017) (finding removal period extended pursuant to § 1231(a)(1)(C) notwithstanding ICE's failure to serve Notice of Failure to Comply). The regulations further provide that where the removal period is extended, the extension shall run "until the alien demonstrates to the Service that he or she has complied with the statutory obligations." 8 C.F.R. § 241.4(g)(1)(ii). "Once the alien has complied with his or her obligations under the law, the Service shall have a reasonable period of time in order to effect the alien's removal." *Id.*; *see also Jiang v. Holder*, No. 15-CV-48-JTC, 2015 WL 3649739, at *4 (W.D.N.Y. June 11, 2015) ("[D]uring the period of 'failure to comply' suspension, '[DHS] is not obligated to complete its scheduled custody reviews . . . until the alien has demonstrated compliance with the statutory obligations.'" (quoting 8 C.F.R. § 241.4(g)(5)(iii))).

Here, the Court previously determined in *Cyclewala I* that under § 1231(a)(1)(b), the removal period began on February 11, 2020, when Petitioner was released from state criminal custody. Although acknowledging that there was evidence before the Court that supported Petitioner's argument that his removal period had not been extended, the Court concluded that the difficulty in verifying Petitioner's identity and obtaining travel documents for him was largely the result of Petitioner's own actions and that § 1231(a)(1)(C) applied to extend the removal period. As a result, at the time the D&O was issued, Petitioner's statutory removal period had not expired and he was still appropriately detained.

As in *Cyclewala I*, Respondent again argues that the removal period has been extended in this case pursuant to § 1231(a)(1)(C), due to Petitioner's "continued failure to provide full and complete information to immigration officials." (Dkt. 4-3 at 8). While contending that "Petitioner's actions *since his last petition was denied* show that he has not satisfied his obligations under § 1231(a)(1)(C)" (emphasis added) (*id.*), Respondent has not identified any actions by Petitioner since the time of his last petition that would support an allegation that Petitioner has continued to engage in acts to prevent his removal. Indeed, to the contrary, Respondent acknowledges that Petitioner provided "meaningful information" in March of 2021, including information about Petitioner's early education, which should allow Indian officials to verify his identity. (*Id.*). The Court finds that the submission of additional biographical information to assist in obtaining his travel documents, and the lack of any recent evidence suggesting that Petitioner is frustrating those efforts, demonstrates Plaintiff's compliance with his statutory obligations.

- 9 -

Accordingly, the Court finds that while, as discussed in *Cyclewala I*, the removal period was extended in this case, that extension terminated in March of 2021.

Respondent argues that even if the removal period has expired based on Petitioner's provision of material information in March of 2021, ICE "should . . . be allowed a reasonable period of time to act on that information in order to obtain removal documents for Petitioner." (Dkt. 4-3 at 8). The Court agrees. As discussed above, under *Zadvydas*, six months of post-removal-period detention is presumptively reasonable. Running from March 2021, the presumptively reasonable period expired in September 2021. The Court accordingly finds that consideration of whether Petitioner has met his initial burden and if Respondent can rebut that showing is necessary.

### A.  Petitioner Has Satisfied his Initial Burden

As noted above, after expiration of the presumptively reasonable detention period, Petitioner bears the initial burden to demonstrate that there is good reason to believe there is no significant likelihood he will be removed in the reasonably foreseeable future. *See Pineda v. Shanahan*, 258 F. Supp. 3d 372, 379 (S.D.N.Y. 2017) (noting that *Zadvydas* "places an initial burden on the detainee"). "In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien." *Hassoun*, 2019 WL 78984, at *4. Further, "[w]hat constitutes the 'reasonably foreseeable future' will depend on the length of detention." *Id.*; *see Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable

future' conversely would have to shrink."). "In effect, the parties' respective burdens shift as the length of detention increases." *Hassoun*, 2019 WL 78984, at *4; *Singh v. Whitaker*, 362 F. Supp. 3d. 93, 102-03 (W.D.N.Y. 2019) (noting that "the passage of time combined with" the "government [being] no closer to identifying and repatriating [a detainee] than they were once they first took him into custody" is sufficient to satisfy a petitioner's initial burden), *appeal withdrawn*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019). But "[g]ood reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (citations, quotations, and alterations omitted), *appeal withdrawn*, No. 19-3333, 2020 WL 1862195 (2d Cir. Feb. 6, 2020).

Here, Petitioner has now been subjected to more than 22 months of detention since his removal period began. While the Court previously deemed the removal period to have been extended, it is not indeterminate. Even assuming, as Respondent suggests, that an additional six-month period should be calculated from March of 2021 when Petitioner provided additional background information to what was already possessed by ICE, Petitioner's current detention exceeds that time frame. Accordingly, a determination of the "reasonably foreseeable future" is decidedly limited at this time. *See Aung v. Barr*, No. 20-CV-681-LJV, 2020 WL 4581465, at *3 (W.D.N.Y. Aug. 10, 2020) (holding that because petitioner was "subjected to more than thirteen months of post-removal-order detention—more than twice the presumptively reasonable period," that "[w]hat counts as

the 'reasonably foreseeable future' therefore is quite narrow." (quotation and citation omitted)).

Further, not only has there been a substantial passage of time, there does not appear to be any information before the Court at this time demonstrating that ICE has made progress in repatriating Petitioner, despite Petitioner's provision of the additional biographical information.[1]  *Cf. Lorenzo v. Barr,* No. 20-CV-1372 (JLS), 2021 WL 84283, at *6 (W.D.N.Y. Jan. 11, 2021) ("The mere passage of time beyond the six-month presumptively reasonable period does not satisfy his burden under *Zadvydas*.").  The reasons for the lack of any such progress are unexplained, particularly where Respondent concedes that "India has a good prior record of accepting removed aliens."  (Dkt. 4-3 at 11).  The Court is left with no estimation as to when removal may be effectuated.  *See Singh,* 362 F. Supp. 3d at 102 ("And if DHS has no idea of when it might reasonably expect Singh to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future.  So this Court is left to guess whether his deportation might occur in ten days, ten months, or ten years."), *appeal withdrawn*, No. 19-729, 2019 WL 2590582 (2d Cir. May 1, 2019).  While the COVID-19 pandemic may be contributing to the delay, Respondent has not documented that as the reason and the Court will not presume it to be the case.  *Cf. Jiajie Gao v. Barr*, No. 6:20-CV-06529 EAW, 2021 WL 630911, at *3 (W.D.N.Y. Feb. 18, 2021) ("Here,

---

[1] As discussed further below, because of the procedural posture of the case, the Court will allow Respondent an opportunity to supplement this information.

there is no dispute that Petitioner possesses a valid passport from the People's Republic of China and could thus be removed to China were a flight available. Accordingly, the sole impediments to his removal are the travel restrictions flowing from the COVID-19 pandemic. The Court agrees with the other federal courts that have concluded this is insufficient to satisfy the initial burden of demonstrating there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.").

Finally, in this case, despite Respondent confirming that the affidavit and letters submitted by three of Petitioner's friends were forwarded to the Indian consulate in March of 2021, Petitioner contends that as of August 2021, at least two of those individuals had not yet been contacted by immigration officials in the United States or India. (Dkt. 7 at 3-4). These facts support Petitioner's contention that efforts to obtain his travel documents have not been zealous and substantiate his required showing.

In sum, based on the foregoing, Petitioner has satisfied his initial burden of showing that there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.

    **B.**    <u>**Respondent will be Permitted to Supplement his Submissions**</u>

The Court finds that, at this time, Respondent has failed to rebut Petitioner's showing. Respondent argues that the recent evidence supplied by Petitioner "shows that both the United States government and the Indian government are working towards verifying Petitioner's identity" and the "confirmation of Petitioner's identity and the issuance of travel documents from India are the final steps in his removal." (Dkt. 4-3 at 11-12). However, almost six months have passed since that time and Petitioner apparently

remains in the United States. As such, "this Court is left to guess whether [Petitioner's] deportation might occur in ten days, ten months, or ten years." *Singh*, 362 F. Supp. 3d at 102.

Nonetheless, the Court does not find it appropriate to grant the petition without affording Respondent an opportunity to file a supplemental submission in opposition. As discussed above, the removal period in this case did not expire until March 2021. Thus, when Respondent filed his response on June 28, 2021, the six-month presumptively reasonable post-removal-period detention was ongoing. In order to appropriately assess the merits of the petition, the Court needs additional information regarding what progress was made during the remainder of the six-month period and thereafter. *See generally Rual v. Barr*, No. 6:20-CV-06215 EAW, 2020 WL 3972319, at *4 (W.D.N.Y. July 14, 2020) (allowing respondent to supplement submissions where petitioner met his initial showing).

The Court thus instructs Respondent to file any supplement to his opposition to the petition by no later than January 18, 2022. The Court is particularly interested in any information as to efforts to obtain the issuance of travel documents that have been made since Respondent's last submission and the status of those efforts. *See Senor*, 401 F. Supp. 3d at 432 (giving the government the opportunity to submit "evidence specific to [the petitioner's] case," which "might include correspondence from Haitian officials indicating that they are moving swiftly to provide [the petitioner] with travel documents or explaining reasons for the delay that appear to be resolved or resolvable," or a well-supported estimated date by which repatriation is expected to occur). Similarly, Respondent shall advise how or if the COVID-19 pandemic implicates Petitioner's removal.

**CONCLUSION**

For the foregoing reasons, the Court concludes that Petitioner has met his initial burden of demonstrating that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. The Court grants Respondent an opportunity to supplement his submissions by no later than January 18, 2022, in an attempt to rebut that showing. In addition, the Court dismisses all named Respondents with the exception of Jeffrey Searls.

SO ORDERED.

                                                                                 ELIZABETH A. WOLFORD
                                                                                 Chief Judge
                                                                                  United States District Court

Dated:       December 16, 2021
                 Rochester, New York